# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

REX DITTO,

    Plaintiff,

v.                                             Case No. 4:23-cv-335-MW-MJF

DOCTOR LEECOK, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Rex Ditto, a Florida prisoner proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint under 42 U.S.C. § 1983. Doc. 9. The undersigned recommends that the complaint be dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2) and 1915A, for failure to state a claim upon which relief can be granted.

### I. ALLEGATIONS OF DITTO'S AMENDED COMPLAINT

Ditto is an inmate of the Florida Department of Corrections who is currently confined at the Graceville Correctional Facility. Doc. 9 at 2.[1]

---

[1] Citations to page numbers of Ditto's amended complaint are to the numbers assigned by the District Court's Electronic Case Filing system ("ECF").

Page 1 of 17

Ditto initiated this action on July 31, 2023, while he was confined at the Wakulla Correctional Institution. Doc. 1. Ditto's amended complaint names three Defendants at Wakulla CI: Doctor Leacock, Assistant Warden R. Brown, and Doctor McCoy. Doc. 9 at 2-4. Ditto sues Defendants in their individual capacities. *Id*.

Ditto's amended complaint alleges that Ditto was transferred to Wakulla CI on September 20, 2022, to receive additional assessments for gender dysphoria. Doc. 9 at 5. The assessments were approved by "the gender dy[s]phoria doctor in Tallahassee, Florida." *Id*.

In December 2022, Dr. Leacock (Ditto's psychologist) interviewed Ditto and completed a "sui[c]de assessment test." *Id*. at 6. In February 2023, medical staff assessed Ditto's "physical condition." *Id*. In April 2023, Dr. McCoy took over Ditto's mental-health treatment. *Id*.

In late June 2023, McCoy informed Ditto that McCoy "was going to set [Ditto's] interview up for gender dy[s]phoria assessment." *Id*. at 6. On July 30, 2023, Ditto was interviewed in Leacock's office by "the doctor in Tallahassee" via videoconference, to complete the gender dysphoria assessment. *Id*. at 6-7.

Ditto asserts that Leacock and McCoy deliberately delayed the interview with the Tallahassee doctor until "30 days to[o] late." *Id*. at 6-7. Ditto explains that: "In June or July 2023, the State Legislative [sic] suspended all asses[s]ments for gender dy[s]phoria." *Id*. at 6.

Ditto is suing Assistant Warden Brown concerning lack of access to shaving services to remove facial hair. *Id*. at 8. In December 2022, Ditto began writing grievances "concerning no way to shave my facial hair." *Id*. Brown advised Ditto to use a dormitory barbershop. *Id*. The dormitory barbershop, however, was open only five times between January and April 2023. On April 1, 2023, all institutional barbershops were closed due to security issues. *Id*. Ditto concludes that Brown intentionally deprived Ditto of the ability to shave so that Ditto would have a full beard during the videoconference with the doctor in Tallahassee on July 30, 2023. *Id*.

Based on the foregoing allegations, Ditto asserts these claims:

> My 8th Amendment right to be treated for my mental disorder which I believe to have Gender Dy[s]phoria, and my 1st Amendment right to express my gender identity freely.

*Id*. at 9. As relief, Ditto seeks an injunction ordering that Leacock, McCoy and Brown provide "a full reevaluation by a doctor at Dade CI so I may

then be given an exception to the new Florida law as I should have been assessed before the law was passed." *Id*. at 9. In addition, Ditto seeks $50,000.00 each from Leacock and McCoy. *Id*.

## II. Discussion

### A. Standard of Review under 28 U.S.C. §§ 1915(e)(2) AND 1915A

Because Ditto is a prisoner and is proceeding *in forma pauperis*, the court is required to review Ditto's amended complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (comparable screening provision of *in forma pauperis* statute).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8's standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

To prevent dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Iqbal*, 556 U.S. at 678. In applying the foregoing standard, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

B. **Ditto's Eighth-Amendment Claims Must Be Dismissed**

Ditto claims that the Defendants violated the Eighth Amendment by delaying—and thereby preventing—Ditto from receiving an assessment and treatment for gender dysphoria. Doc. 9 at 9; *see also id.* at 8 ("[T]hese three individual[s] intended to keep me from treatment for my mental disorder."). Ditto's Eighth-Amendment claims against

Leacock and McCoy appear grounded in their delaying Ditto's assessment for gender dysphoria until such assessment—and treatment—was barred by state law. Doc. 9 at 5-7. Ditto's claim against Brown appears grounded in Brown's failure to provide access to shaving services which resulted in Ditto having a full beard during the interview portion of the gender dysphoria assessment. Doc. 9 at 8.[2]

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting U.S. Const. amend VIII). "[P]rison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" *Keohane*, 952 F.3d at 1265 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A prisoner claiming inadequate—or interference with adequate—medical care in violation of the Eighth Amendment must show "(1) a serious medical need; (2) the defendants' deliberate

---

[2] Ditto does not allege that Brown participated in Ditto's mental-health care. Ditto also does not allege that shaving was part of Ditto's treatment plan. Nor does Ditto allege that when Brown failed to provide Ditto greater access to shaving services, Brown knew that shaving was a prescribed or obviously medically-necessary component of Ditto's treatment plan and deliberately disregarded it.

indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008).

The Eighth-Amendment deliberate-indifference standard has three components. "[A] plaintiff must demonstrate that the prison officials '(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.'" *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting *Harper v. Lawrence County*, 592 F.3d 1227, 1234 (11th Cir. 2010)). Conduct that is more than gross negligence includes: "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). A prison official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Id*.

The causation element of a § 1983 claim requires a plaintiff to show "that their injury was caused by prison official's wrongful conduct. This element requires a link between the injury and the constitutional violation." *Barcelona v. Parish*, No. 20-11229, 2021 WL 3238819, at *4

(11th Cir. July 30, 2021) (unpublished decision) (citing *Goebert v. Lee County*, 510 F.3d 1312 (11th Cir. 2007)).

Ditto claims that Leacock and McCoy delayed Ditto's gender dysphoria assessment for a non-medical reason—so that the assessment would not be completed before a new state law took effect that suspended such assessments. Doc. 9 at 6-8. Ditto's allegations and Florida law, however, do not support that inferential leap.

First, Ditto has not identified—nor has the undersigned found—any Florida statute that, as Ditto describes, "suspend[s] all assessments for gender dy[s]phoria." *See* Doc. 9 at 6. But even if such a law existed, Ditto's allegations demonstrate that the alleged delay *did not* interfere with completion of Ditto's assessment. Ditto states that the videoconference interview with the doctor in Tallahassee—the step necessary to complete (or advance) the gender dysphoria assessment—occurred on July 30, 2023, *despite* the purported law taking effect. Doc. 9 at 6. Thus, Ditto's allegations do not plausibly satisfy the deliberate-indifference and causation elements necessary to state an Eighth-Amendment claim against Leacock or McCoy arising from the delay in *completion* of Ditto's gender dysphoria assessment.

Ditto's allegations also fail to support a reasonable inference that the delay—or having facial hair—affected the *results* of the assessment. Ditto's amended complaint was filed on October 6, 2023, which is two months after the interview with the doctor in Tallahassee on July 30, 2023. Ditto, however, does not allege that any finding or conclusion of the assessment was compromised by the delay or existence of facial hair. If Ditto does not know the results of the assessment, then any allegation that the delay and facial hair compromised the assessment is nothing but speculation.

This leaves Ditto's claim that the delay in the assessment—and the inability to shave—prevented Ditto from receiving *treatment* for gender dysphoria. Doc. 9 at 6, 8, 9. This claim fares no better.

The State of Florida enacted a law—effective May 17, 2023—that prohibits the use of State funds for "sex-reassignment prescriptions or procedures as defined in § 456.001." *See* Fla. Stat. § 286.311(2). "Sex-reassignment prescriptions or procedures" are defined as:

> 1. The prescription or administration of puberty blockers for the purpose of attempting to stop or delay normal puberty in order to affirm a person's perception of his or her sex if that perception is inconsistent with the person's sex as defined in subsection (8).

> 2. The prescription or administration of hormones or hormone antagonists to affirm a person's perception of his or her sex if that perception is inconsistent with the person's sex as defined in subsection (8).
>
> 3. Any medical procedure, including a surgical procedure, to affirm a person's perception of his or her sex if that perception is inconsistent with the person's sex as defined in subsection (8).

Fla. Stat. § 456.001(9)(a).

Ditto's allegations do not support a reasonable inference that any Defendant's conduct affected Ditto's *treatment* for gender dysphoria. As noted above, Ditto does not describe the results of the gender dysphoria assessment or any conclusions about current or future treatment. There are no facts from which an inference could be drawn that Ditto would be receiving a particular treatment—but is not—due to any Defendant's conduct. In that regard, it bears noting that treatments such as psychotherapy, mental health counseling and social transitioning are unaffected by the new law.

Even assuming to Ditto's benefit that earlier completion of the assessment *would have* resulted in a treatment plan that included one or more of the treatments now prohibited under § 286.311, Ditto still cannot

show that the Defendants' conduct "ke[pt] [Ditto] from treatment." Doc. 9 at 8. The reason is that any now-prohibited treatment *would have been halted anyway* on May 17, 2023, due to the law. Contrary to Ditto's belief, the law contains no exception or grandfather clause that would exempt Ditto from its effects. *See* Fla. Stat. § 286.311; *see also* Fla. Stat. 456.001(b) (providing exceptions for particular prescriptions and medical procedures, none of which apply here).[3]

---

[3] Section 456.001(9)(b) provides that the term "sex-reassignment prescriptions or procedures" does not include:

> 1. Treatment provided by a physician who, in his or her good faith clinical judgment, performs procedures upon or provides therapies to a minor born with a medically verifiable genetic disorder of sexual development, including any of the following:
>
>> a. External biological sex characteristics that are unresolvably ambiguous.
>>
>> b. A disorder of sexual development in which the physician has determined through genetic or biochemical testing that the patient does not have a normal sex chromosome structure, sex steroid hormone production, or sex steroid hormone action for a male or female, as applicable.
>
> 2. Prescriptions or procedures to treat an infection, an injury, a disease, or a disorder that has been caused or exacerbated by the performance of any sex-reassignment prescription or procedure, regardless of whether such prescription or

In short, Ditto's claims that the Defendants' conduct was "intended to keep [Ditto] from treatment" and that their conduct caused Ditto not to receive treatment, lack facial plausibility. As Ditto's demand for relief suggests, Ditto's Eighth-Amendment claims are based on Ditto's faulty assumption that had the gender dysphoria assessment been completed *before* the effective date of the new law—presumably Fla. Stat. § 286.311—Ditto's current assessment or treatment would have been different. *See* Doc. 9 at 6, 8. That premise, however, has no factual support and is based on speculative and unreasonable inferences.

Ditto understandably wanted the gender dysphoria assessment completed more quickly. But even taking Ditto's allegations as true, they do not support a reasonable inference that Leacock and McCoy deliberately delayed the assessment for a non-medical reason, or that

---

procedure was performed in accordance with state or federal law.

3. Prescriptions or procedures provided to a patient for the treatment of a physical disorder, physical injury, or physical illness that would, as certified by a physician licensed under chapter 458 or chapter 459, place the individual in imminent danger of death or impairment of a major bodily function without the prescription or procedure.

they knew that delaying the assessment exposed Ditto to a substantial risk of serious harm.[4] Ditto also fails to establish the causation element—that a Defendant's conduct caused Ditto to not be assessed or receive treatment for gender dysphoria. Because Ditto has not nudged his Eighth-Amendment claims across the line from conceivable to plausible, these claims must be dismissed. *Twombly*, 550 U.S. at 555, 570.

## C. Ditto's Freedom-of-Expression Claim Must Be Dismissed

Ditto's First-Amendment claim is based on the inability to remove facial hair. Doc. 9 at 8-9. Ditto asserts that Brown's failure to provide sufficient access to shaving services impermissibly burdened Ditto's First-Amendment right to express female gender. Doc. 9 at 8-9. Ditto's allegations, however, fail to state a plausible claim that Brown violated the First Amendment.

---

[4] Ditto's allegation that Brown failed to comply with the Florida Administrative Code that "says clippers will be provided for shaves 3 times," Doc. 9 at 8, brings Ditto no closer to establishing that Brown acted with deliberate indifference. *See* Fla. Admin. Code r. 33-602.101(4) ("Those male inmates who desire to remain clean shaven shall be clipper shaved three times per week. . . ."). Violation of a state regulation does not, in itself, violate the Constitution or establish deliberate indifference. *See, e.g., Edwards v. Gilbert*, 867 F.2d 1271, 1275-76 (11th Cir. 1989). Additionally, Ditto does not allege that shaving had been medically prescribed.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Although "[t]he First Amendment literally forbids the abridgment only of 'speech,'" the Supreme Court has "long recognized that its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

A message "delivered by conduct that is intended to be communicative and that, in context, would reasonably be understood by the viewer to be communicative," *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 294 (1984), is symbolic speech that falls "within the scope of the First and Fourteenth Amendments." *Johnson*, 491 U.S. at 404; *see also Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999) ("Non-verbal conduct implicates the First Amendment when it is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood."). The Supreme Court, however, explicitly has rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). "Because the Court has eschewed a rule that

'all conduct is presumptively expressive,' individuals claiming the protection of the First Amendment must carry the burden of demonstrating that their nonverbal conduct meets the applicable standard." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018).

The applicable standard has two components: (1) "an intent to convey a particularized message" and (2) a "great" "likelihood . . . that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410-11 (1974)). The plaintiff is responsible for establishing that his or her conduct is expressive. *Knox*, 907 F.3d at 1181.

Ditto has not shown that being clean shaven reasonably would be understood as expressing female gender identity. Being clean shaven is one of two grooming options required of all inmates in the Florida Department of Corrections regardless of gender. *See* Fla. Admin. Code r. 33-602.101(4) ("All inmates shall elect either to be clean shaven or to grow and maintain a half-inch beard. . . . Those male inmates who desire to remain clean shaven shall be clipper shaved three times per week. . . ."). Ditto has not shown that being clean shaven "would reasonably be

understood by the viewer to be communicative" of female gender identity for First-Amendment purposes. *Clark*, 468 U.S. at 294.

But even if being clean shaven qualified as "expressive conduct" under the First Amendment, Ditto does not plausibly allege that Brown undertook action to suppress that speech. According to Ditto's allegations, Brown did not prohibit Ditto from shaving, Brown merely advised Ditto to access the barbershop. Doc. 9 at 8. Although Ditto complains that the dormitory barbershop was rarely open and that all barbershops were closed after April 1, 2023, Ditto does not allege that Brown was responsible for the closures, and he concedes that the closures after April 1, 2023, were caused by "issues with security cameras." Doc. 9 at 8. That is a content-neutral, legitimate penological reason.

Because Ditto has not alleged sufficient facts to state a plausible claim that Brown—or any Defendant—infringed Ditto's right to freedom of expression, Ditto's First-Amendment claim must be dismissed.

### III. CONCLUSION

Ditto's allegations are insufficient to state a plausible claim for violation of the First and Eighth Amendments. Accordingly, the undersigned respectfully **RECOMMENDS** that:

1. This action be **DISMISSED** without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), for failure to state a claim upon which relief can be granted.

2. The clerk of court be directed to enter judgment accordingly and close this case file.

At Panama City, Florida, this 7th day of November, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address all preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**